1  GREGORY S. WALSTON, State Bar No. 196776
2  WILLIAMS WALSTON LLP
   225 Bush Street, 16th Floor
3  San Francisco, California 94104
   Tel: (415) 269-3208
4  Fax: (415) 474-7108

5  ATTORNEYS FOR PLAINTIFFS
   KIMBERLY JONES, JANE ROE NUMBER
6  ONE, JANE ROE NUMBER TWO, JANE ROE
   NUMBER THREE, JANE ROE NUMBER FOUR,
7  AND JANE ROE NUMBER FIVE

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  KIMBERLY JONES, JANE ROE NUMBER      Case No. _____
    ONE, JANE ROE NUMBER TWO, JANE
12  ROE NUMBER THREE, JANE ROE
    NUMBER FOUR, and JANE ROE            **PLAINTIFFS' VERIFIED
13  NUMBER FIVE, and all similarly situated,  COMPLAINT FOR DAMAGES AND
                                         PERMANENT INJUNCTIVE
14                                       RELIEF; REQUEST FOR
                    Plaintiffs,          TEMPORARY RESTRAINING
15                                       ORDER; REQUEST FOR
                                         PRELIMINARY INJUNCTIVE
16       v.                              RELIEF; REQUEST FOR
                                         DECLARATORY JUDGMENT**
17  DÉJÀ VU, INC., DÉJÀ VU CONSULTING,
    INC., HUNGRY I, CHOWDER HOUSE,       **DEMAND FOR JURY TRIAL**
18  INC., LA GALS, CENTERFOLDS, DÉJÀ
    VU SHOWGIRLS OF SAN FRANCISCO,       **CLASS ACTION**
19  LLC, ROARING 20'S, ROARING 20'S,
    LLC, CENTURY THEATER, CENTURY
20  THEATRES, INC., GOLD CLUB, GOLD
    CLUB – SF, LLC, GARDEN OF EDEN,
21  GARDEN OF EDEN, LLC, LITTLE
    DARLINGS, LITTLE DARLINGS OF SAN
22  FRANCISCO, LLC, LARRY FLYNT'S
    HUSTLER CLUB, S.A.W.
23  ENTERTAINMENT LIMITED,
    BROADWAY SHOWGIRLS,
24  ALTERNATIVE ENTERTAINMENT, INC.,
    STRAND THEATER, KINGSMARK
25  GROUP, MARKET STREET CINEMA,
    DOES ONE THROUGH 1000, INCLUSIVE,
26

27                    Defendants.

28

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

Plaintiffs KIMBERLY JONES, JANE ROE NUMBER ONE, JANE ROE NUMBER TWO, JANE ROE NUMBER THREE, JANE ROE NUMBER FOUR, and JANE ROE NUMBER FIVE, on behalf of themselves and the Plaintiff Class, allege as follows:

**PRELIMINARY ALLEGATIONS**

1.      This is a class action brought by Plaintiffs KIMBERLY JONES and JANE ROE NUMBERS ONE through FIVE, inclusive ("Plaintiffs") on their own behalf and on behalf of all others similarly situated (the "Plaintiff Class").  The Plaintiff Class is composed of exotic female dancers who provide, or during the relevant period provided, nude and semi-nude live performances as employees of Defendants but who have been denied the fundamental rights guaranteed to all employees under federal, state and municipal laws.

2.      Plaintiff Subclass One consists of those member of the Plaintiff Class who are also owner-employees of a competing business providing nude and semi-nude live performances by exotic female dancers and who previously were employed by Defendants.  Plaintiff Subclass One operates its unionized business in a manner providing its employees and owner-employees with the fundamental rights guaranteed to all employees under federal, state and municipal laws. Plaintiff Subclass One joins in this class action both to assert the rights of the Plaintiff Class generally and to enjoin Defendants' illegal conduct as an unfair business practice.

3.      Plaintiff Subclass Two consists of those members of the Plaintiff Class who are or appear to be of non-Caucasian ethnicity.  Defendants systematically violate both federal and state laws by routinely denying Plaintiff Subclass Two employment in its most lucrative performance venues as defined by restricting their employment opportunities during the most lucrative working hours and at the most lucrative of their establishments.  Plaintiff Subclass Two joins in this class action both to assert the rights of the Plaintiff Class generally and to remedy Defendants illegal and race-based employment practices.

4.      Defendants to this action are DÉJÀ VU INC., a multinational corporation, and various adult entertainment nightclubs (specifically set forth in paragraph 15) doing business under the DÉJÀ VU name in the City and County of San Francisco.  Defendants provide adult entertainment by employing members of the Plaintiff Class and Plaintiff Subclasses under illegal,

WILLIAMS WALSTON
225 Bush Street, 16ᵗʰ Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

sham "independent contractor" agreements.  Plaintiffs will amend to name business entity and individual Defendants as the DÉJÀ VU business structure, ownership and management structure become known through the discovery process.

5.      Plaintiffs seek relief for the Plaintiff Class and subclasses under the federal Fair Labor Standards Act and the civil provisions of the Racketeer Influence and Corrupt Organizations Act, the Sherman Act, Title VII, the State of California's labor codes and related theories, and the City and County of San Francisco's Minimum Wage Ordnance to remedy Defendants' failure to recognize their lawful employees' rights including the payment of wages and statutorily-mandated benefits including rest and meal breaks, unemployment and workers' compensation protections and Social Security contributions.  Plaintiffs additionally seek injunctive relief compelling Defendants to provide their Plaintiff Class employees with the fundamental rights guaranteed under these laws and the continuing jurisdiction of this Court to compel compliance.

6.      The Class Period is designated as the time from four years prior to the date of filing of this Complaint through the trial date, based upon information and belief that Defendants began the violations described herein began prior to the Class Period maintained these violations on a continuing basis. Plaintiffs reserve the right to amend this Complaint to reflect a different Class Period as discovery proceeds.

7.      This class action is properly brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and pursuant to California Code of Civil Procedure § 382.  The Plaintiff Class is so numerous as to make a joinder of individual Plaintiff actions impracticable and the disposition of their class claims will provide a benefit both to the class and to this Court.  Prior individual plaintiff's actions raising the issues presented in this Complaint have failed to correct the Defendants' illegal activities or to provide the Plaintiff Class with the fundamental rights guaranteed to all employees under the laws of the United States, the State of California and the City and County of San Francisco.

8.      Though the exact number of class members is not presently known and can only be determined through coordinated discovery, hundreds and perhaps thousands of potential Plaintiffs

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

1    share in the claims identified by this Complaint.  These claims will be resolved by a common legal

2    analysis of common facts that predominate over questions specific to individual members of the

3    Plaintiff Class.  Defendants' presumed defenses, as evaluated by their past litigation practices, will

4    apply generally to the Plaintiff Class and are not distinguishable as to proposed class members.

5    Furthermore, without Defendants' illegal activities being enjoined with respect to the Plaintiff

6    Class as a whole, a multiplicity of lawsuits will necessarily continue before this Court and courts

7    of the State of California with the associated risk of inconsistent remedies being ordered.

8          9.      The claims of the Plaintiffs named in this Complaint present claims typical of the

9    claims of the Plaintiff Class as a whole, all members of which have sustained and/or will sustain

10    damages, including irreparable harm, as a proximate and legal result of  the common course of

11    Defendants' illegal conduct as alleged in this Complaint.  The Plaintiffs, on behalf of themselves

12    and all others similarly situated, will fairly and adequately protect the interests of all members of

13    the Plaintiff Class because it is in their best interest to obtain the full compensatory and remedial

14    measures due them for all services provided in the past and for future services to be provided as

15    Defendants' employees.  The Plaintiffs have further protected the Plaintiff Class' interests by

16    employing counsel experienced in class action litigation and who will adequately represents their

17    interests and the common interests of the Plaintiff Class.

18                           **JURISDICTION AND VENUE**

19          10.     This Complaint alleges causes of action under the laws of the United States,

20    including 15 U.S.C. § 1 *et seq.*, 18 U.S.C. § 1961 *et seq.*, 29 U.S.C. § 157 *et seq.*, and 29 U.S.C.

21    §216(b).  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

22          11.     This Complaint alleges causes of action under the laws of the State of California

23    and the City and County of San Francisco, which arise out of the same set of operative facts as the

24    federal causes of action.  Accordingly, this Court has pendant jurisdiction over those claims

25    pursuant to 28 U.S.C. § 1367(a).

26          12.     Defendants' illegal actions as set forth in this Complaint occurred, and continue to

27    occur, in the City and County of San Francisco and in the Northern District of California.  Venue

28    is therefore proper under 28 U.S.C. § 1391(b)(2).

**INTRADISTRICT ASSIGNMENT**

13.     The events set forth in this Complaint occurred within the County of San Francisco, and it is therefore properly assigned to the San Francisco or Oakland division of this Court pursuant to Civil Local Rule 3-2(c) and (d).

14.     Plaintiffs are aware of one related case involving some of the same issues and defendants identified in this Complaint:  *Beleck v. Gold Club, et al.*, N.D. Cal. No. 03-01539, the Honorable Claudia Wilken presiding.  However, this case has been resolved and cannot provide the forum for an administrative motion pursuant to Civil Local Rule 3-12(b).  Plaintiffs respectfully notify this Court of the related case in the event that assignment or reassignment might be appropriate pursuant to Civil Local Rules 3-3(a) and 3-12(c) and/or the Assignment Plan as stated in General Order Number 44.E.1 or 44.E.4.

**GENERAL ALLEGATIONS**

15.     Defendant DÉJÀ VU, INC. is a Michigan Corporation.  On information and belief, Defendant DÉJÀ VU, INC. maintains ownership, recruitment and/or operational interests in various nightclubs featuring female nude or semi-nude dancing in the City and County of San Francisco, to wit, Defendants HUNGRY I, LA GALS, CENTERFOLDS, ROARING 20's, CENTURY THEATER, GOLD CLUB, GARDEN OF EDEN, LITTLE DARLINGS, LARRY FLYNT'S HUSTLER CLUB, BROADWAY SHOWGIRLS, STRAND THEATER, and MARKET STREET CINEMA as well as numerous similar businesses throughout California, Colorado, Florida, Hawaii, Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Nevada, New York, Ohio, Tennessee, and Washington, as well as in Canada and France.

16.     Defendant DÉJÀ VU CONSULTING, INC., is registered with the California Secretary of State as corporation number C1913905 and maintains ownership, recruitment and/or operational interests in various nightclubs featuring female nude or semi-nude dancing in the City and County of San Francisco, to wit, Defendants HUNGRY I, LA GALS, CENTERFOLDS, ROARING 20's, CENTURY THEATER, GOLD CLUB, GARDEN OF EDEN, LITTLE

DARLINGS, LARRY FLYNT'S HUSTLER CLUB, BROADWAY SHOWGIRLS, STRAND THEATER, and MARKET STREET CINEMA.

17.     Defendant HUNGRY I, also known as DÉJÀ VU - HUNGRY I, is a DÉJÀ VU nightclub offering nude or semi-nude dancing at 546 Broadway, San Francisco, California.

18.     Defendant CHOWDER HOUSE, INC. is registered with the California Secretary of State as corporation number C0388527 and is the registered owner and operator of defendant nightclub HUNGRY I at 546 Broadway, San Francisco, California.

19.     Defendant CENTERFOLDS, also known as DÉJÀ VU CENTERFOLDS, is a DÉJÀ VU nightclub offering nude dancing at 391 Broadway, San Francisco, California.

20.     Defendant DÉJÀ VU SHOWGIRLS OF SAN FRANCISCO, LLC is registered with the California Secretary of State as limited liability company number 199619110022 and is the registered owner and operator of defendant nightclub CENTERFOLDS at 391 Broadway, San Francisco, California.

21.     Defendant ROARING 20'S, also known as DÉJÀ VU – ROARING 20'S, is a DÉJÀ VU nightclub offering nude dancing at 552 Broadway, San Francisco, California.

22.     Defendant ROARING 20'S, LLC is registered with the California Secretary of State as limited liability company number 199631810010 and is the registered owner and operator of defendant nightclub ROARING 20'S at 552 Broadway, San Francisco, California.

23.     Defendant CENTURY THEATER, also known as DÉJÀ VU – CENTURY THEATER, is a DÉJÀ VU nightclub offering nude dancing at 816 Larkin Street, San Francisco, California.

24.     Defendant CENTURY THEATRES, INC. is registered with the California Secretary of State as corporation number C2551769 and is the registered owner and operator of defendant nightclub CENTURY THEATER at 816 Larkin Street, San Francisco, California.

25.     Defendant GOLD CLUB, also known as DÉJÀ VU – GOLD CLUB, is a DÉJÀ VU nightclub offering nude or semi-nude dancing at 650 Howard Street, San Francisco, California.

26.     Defendant GOLD CLUB - SF, LLC is registered with the California Secretary of State as limited liability company number 2003256610001 and is the registered owner and operator of defendant nightclub GOLD CLUB at 650 Howard Street, San Francisco, California.

27.     Defendant GARDEN OF EDEN, also known as DÉJÀ VU – GARDEN OF EDEN, is a DÉJÀ VU nightclub offering nude dancing at 529 Broadway, San Francisco, California.

28.     Defendant GARDEN OF EDEN, LLC is registered with the California Secretary of State as limited liability company number 199619110020 and is the registered owner and operator of defendant nightclub GARDEN OF EDEN at 529 Broadway, San Francisco, California.

29.     Defendant LITTLE DARLINGS, also known as DÉJÀ VU – LITTLE DARLINGS, is a DÉJÀ VU nightclub offering nude dancing at 312 Columbus Avenue, San Francisco, California.

30.     Defendant LITTLE DARLINGS OF SAN FRANCISCO, LLC is registered with the California Secretary of State as limited liability company number 199619110019 and is the registered owner and operator of defendant nightclub LITTLE DARLINGS at 312 Columbus Avenue, San Francisco, California.

31.     Defendant BROADWAY SHOWGIRLS, also known as DÉJÀ VU – BROADWAY SHOWGIRLS and the BROADWAY SHOWGIRLS CABARET, is a DÉJÀ VU nightclub offering nude or semi-nude dancing at 412 Broadway, San Francisco, California.

32.     Defendant ALTERNATIVE ENTERTAINMENT, INC. is registered with the California Secretary of State as corporation number C1785666 and is the registered owner and operator of defendant nightclub BROADWAY SHOWGIRLS at 412 Broadway, San Francisco, California.

33.     Defendant STRAND THEATER, also known as DÉJÀ VU STRAND THEATER, is a DÉJÀ VU nightclub offering nude dancing at 1127 Market Street, San Francisco, California.

34.     Defendant KINGSMARK GROUP is the registered owner and operator of defendant nightclub STRAND THEATER at 1127 Market Street, San Francisco, California.

35.     Defendant LARRY FLYNT'S HUSTLER CLUB is a DÉJÀ VU nightclub offering nude or semi-nude dancing at 1031 Kearny, San Francisco, California.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

36.     Defendant S.A.W. ENTERTAINMENT LIMITED is the registered owner and operator of defendant nightclub LARRY FLYNT'S HUSTLER CLUB at 1031 Kearny St., San Francisco, California.

37.     Defendant MARKET STREET CINEMA, also known as DÉJÀ VU – MARKET STREET CINEMA, is a DÉJÀ VU nightclub offering nude dancing at 1077 Market Street, San Francisco, California.

38.     Defendant LA GALS, also known as DÉJÀ VU – LA GALS, is a DÉJÀ VU nightclub offering nude dancing at 1046 Market Street, San Francisco, California.

39.     Plaintiffs anticipate naming additional and possibly substitute business entity Defendants, as well as individual defendants, due to various DÉJÀ VU clubs' routine failure to comply with business laws including registering with their fictitious business names or maintaining current business licenses with the City and County of San Francisco.

40.     On information and belief, Plaintiffs further anticipate naming additional and possibly substitute business entity defendants because DÉJÀ VU as an entity operates local nightclubs, while maintaining shell corporations and/or sham agreements to create the appearance that it does not have ownership and/or control of local nightclubs.

41.     Plaintiffs are unaware of the identities of Defendants DOES ONE THROUGH 1000, INCLUSIVE.  Plaintiffs will seek leave to amend their Complaint when the identities of Defendants DOES ONE THROUGH 1000, INCLUSIVE are revealed through discovery.

42.     Plaintiffs respectfully petition this Court to permit them to represent and prosecute claims against Defendants on behalf of the similarly situated Plaintiff Class whose numbers include hundreds, if not thousands, of similarly situated dancers who have been denied fundamental workers' rights by Defendants' during their course of employment.

43.     Plaintiff KIMBERLY JONES is an individual residing in the Northern District of California, in the City and County of San Francisco.  For approximately the past year and three months, Plaintiff KIMBERLY JONES has been employed as an exotic dancer at Defendant HUNGRY I nightclub.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

44.     Plaintiff JANE ROE NUMBER ONE is an individual residing in the Northern District of California, in the City and County of San Francisco.  For approximately five years, Plaintiff JANE ROE NUMBER ONE has been employed as a dancer at Defendant HUNGRY I nightclub.  Plaintiff JANE ROE NUMBER ONE files this action under a fictitious name because (1) she wishes to preserve her rights to privacy; (2) the industry norm for exotic dancers is to use fictitious business names as a means of self-protection; and (3) it is common knowledge that Defendants terminate and "blacklist" dancers who assert their rights (which is specifically set forth in the allegations presented in paragraphs 98 through 103).

45.     Plaintiff JANE ROE NUMBER TWO is an individual residing in the Northern District of California, in the City and County of San Francisco.  Plaintiff JANE ROE NUMBER TWO was employed at Defendant HUNGRY I nightclub from approximately 2002 until 2004, when she was fired for being a member of an exotic dancers' union and for refusing to work under the numerous labor-law violations discussed below.  Plaintiff JANE ROE NUMBER TWO files this action under a fictitious name because (1) she wishes to preserve her rights to privacy; (2) the industry norm for exotic dancers is to use fictitious business names as a means of self-protection; and (3) it is common knowledge that Defendants terminate and "blacklist" dancers who assert their rights (which is specifically set forth in the allegations presented in paragraphs 98 through 103) and Plaintiff does not wish to be subject to further retaliation by Defendants.

46.     Plaintiff JANE ROE NUMBER THREE is an individual residing in the Northern District of California, in the City and County of San Francisco.  Plaintiff JANE ROE NUMBER THREE was employed as a dancer at Defendant HUNGRY I during the year 2004.  Plaintiff JANE ROE NUMBER THREE is now an employee, and a co-owner, of another San Francisco nightclub featuring nude female dancing.  Plaintiff JANE ROE NUMBER THREE files this action under a fictitious name because (1) she wishes to preserve her rights to privacy; (2) the industry norm for exotic dancers is to use fictitious business names as a means of self-protection; and (3) it is common knowledge that Defendants terminate and "blacklist" dancers who assert their rights (which is specifically set forth in the allegations presented in paragraphs 98 through 103).

47.     Plaintiff JANE ROE NUMBER FOUR is an individual residing in the Northern District of California, in the City and County of San Francisco.  In the past four years, Plaintiff JANE ROE NUMBER FOUR has been employed at Defendants HUNGRY I, LITTLE DARLINGS, and LARRY FLYNT'S HUSTLER CLUB nightclubs.  Plaintiff JANE ROE NUMBER FOUR is also African American, and left Defendant LARRY FLYNT'S HUSTLER CLUB in part because she, as well as all other African American and Latin American dancers, was forced to work less profitable "day shifts" while Caucasian dancers were given the more profitable "night shifts."  Plaintiff JANE ROE NUMBER FOUR files this action under a fictitious name because (1) she wishes to preserve her rights to privacy; (2) the industry norm for exotic dancers is to use fictitious business names as a means of self-protection; and (3) it is common knowledge that Defendants terminate and "blacklist" dancers who assert their rights (which is specifically set forth in the allegations presented in paragraphs 98 through 103).

48.     Plaintiff JANE ROE NUMBER FIVE is an individual residing in the Southern District of California, in the City and County of San Diego.  Plaintiff was employed as a dancer at Defendant HUNGRY I nightclub until 2004, when she left the City of San Francisco.  Plaintiff JANE ROE NUMBER FIVE files this action under a fictitious name because (1) she wishes to preserve her rights to privacy; (2) the industry norm for exotic dancers is to use fictitious business names as a means of self-protection; and (3) it is common knowledge that Defendants terminate and "blacklist" dancers who assert their rights (which is specifically set forth in the allegations presented in paragraphs 98 through 103) and DÉJÀ VU's presence in the San Diego exotic dancing market renders her to the same form of retaliation as threatens Plaintiffs continuing their profession in the City and County of San Francisco.

49.     Defendants employed Plaintiffs through sham "independent contractor" adhesion contracts by means of which they denied fundamental employees' rights as detailed below.  In particular, Defendants illegally denied Plaintiffs' rights to minimum wages and overtime pay, to the social benefits guaranteed to all employees, to humane employment conditions with rest and meal breaks, to employment conditions without the fear of discipline or termination for asserting their rights as individual employees or their rights to union protections, and to maintain possession

of the tips received from patrons and that constituted Plaintiffs' sole source of income while employed by Defendants.

**ALLEGATIONS OF DEFENDANTS' DOMINATION OF THE MARKET**

50.     Defendant DÉJÀ VU, INC. maintains ownership, recruitment and/or operational interests in the vast majority of San Francisco nightclubs that feature nude or semi-nude female exotic dancing and dominates the San Francisco market in this area.

51.     On information and belief, there are currently seventeen nightclubs in the City and County of San Francisco that employ nude or semi-nude female dancers.  Defendant DÉJÀ VU, INC. maintains ownership, recruitment and/or operational interests in twelve of these clubs.

52.     On information and belief, of the five nightclubs not dominated by DÉJÀ VU, INC., four are very small, employing less than five dancers per night.  Defendant DÉJÀ VU, INC. accordingly owns thirteen of the seventeen San Francisco nightclubs featuring nude or semi-nude female exotic dancing and owns all but one of the large nightclubs.

53.     On information and belief, DÉJÀ VU, INC. also owns the property leased by one of the remaining non-Déjà Vu nightclubs featuring nude or semi-nude female exotic dancing.

54.     On information and belief, there are no nightclubs featuring nude female dancing in other cities or towns proximate to the City and County of San Francisco.  Therefore, by dominating the San Francisco adult nightclub market, Defendant DÉJÀ VU, INC. and Defendants within the DÉJÀ VU business structure (collectively referred to as "Defendant DÉJÀ VU nightclubs") dominate this industry regionally.

55.     Exotic Dancers living within this region cannot practicably seek employment outside of the DÉJÀ VU sphere of control, compelling them to maintain employment under the illegal terms set by Defendant DÉJÀ VU nightclubs.

56.     Defendant DÉJÀ VU nightclubs engage in both intrastate and interstate commerce through the coordinated recruitment and operation of their multinational adult entertainment business complex.

57.     Defendant DÉJÀ VU nightclubs employ multistate communications technologies to engage in this commercial activity, including telephone services (including internet access by telephone) and mail services.

58.     On information and belief, Defendant DÉJÀ VU nightclubs, and other DÉJÀ VU nightclubs not presently named as Defendants, enforced and continue to enforce illegal employment terms by means of mutual defense agreement to impede and delay successful administrative and judicial actions and to blunt the financial impact of these successful actions.

## ALLEGATIONS OF ILLEGAL TERMS OF EMPLOYMENT

59.     Defendants, and each of them, do not afford Plaintiffs applicable employment rights on grounds that they are not actually employees, but are "independent contractors."

60.     However, the "independent contractor" status imposed on Plaintiffs is a sham. Plaintiffs are "employees" rather than "independent contractors" under applicable law.  Defendant DÉJÀ VU nightclubs employed Plaintiffs in the manner defined by California Labor Code § 18, in that they were entities who directly or indirectly, through an agent or any other person, employed or exercised control over the wages, hours, or working conditions of any person.

61.     Specifically, at all times relevant to this Complaint, Defendant DÉJÀ VU clubs determined, directed and controlled all meaningful aspects of Plaintiffs' employment, including their hours and days of work, the scheduling and duration of Plaintiffs' work assignments (including when and whether they took breaks), the sequence in which Plaintiffs were allowed to work, the format and themes of Plaintiffs' performances (including their costuming and appearances), the manner in which Plaintiffs communicated with patrons, the requirements that Plaintiffs engaged in "lap dances" and other intimate contacts with patrons – whether Plaintiffs preferred to engage in these practice or not – and Plaintiffs' hiring, firing and disciplining and all other terms and conditions of employment.

62.     Defendant DÉJÀ VU clubs continue to enforce these conditions of employment, establishing, despite any sham "independent contractor" title, that Plaintiffs have served and continue to serve as employees as defined by applicable law.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

63.     Plaintiffs are informed and believe and thereon allege that in illegally denying Plaintiff's employment rights and imposing the sham "independent contractor" status, Defendant DÉJÀ VU nightclubs jointly acted, and continue to act pursuant to, and in furtherance of a concerted policy and practice of illegally employing Plaintiffs pursuant to sham "independent contractor" adhesion contracts purporting to deny them fundamental employees' rights guaranteed by the laws of the United States, the State of California, and the City and County of San Francisco.

64.     Defendant DÉJÀ VU nightclubs fraudulently misrepresented the "independent contractor" adhesion contracts as lawful despite knowing or having reason to know of their illegality through means including prior litigation.

65.     While Defendant DÉJÀ VU nightclubs enforced and continue to enforce the provisions of these illegal "independent contractor" adhesion contracts, the individual Defendant DÉJÀ VU nightclubs routinely failed to sign many members of the Plaintiff Class to these contracts or to renew the annual contracts presented to these members.

66.     Defendant DÉJÀ VU nightclubs further denied and continue to deny Plaintiffs information advising them of their fundamental employees' rights by illegally failing to post statutorily-required notices in the Plaintiffs' work areas.

67.     Defendant DÉJÀ VU nightclubs exacerbated and continue to exacerbate conditions caused by their illegal failure to post required notices by affirmatively posting false notices misleading Plaintiffs to believe that they had no rights, and by incorrectly verbally informing Plaintiffs that other exotic dancers failed to vindicate their fundamental employees' rights through administrative or judicial actions.

68.     Plaintiffs' employment as live nude or semi-nude exotic dancers was, and continues to be, integral to and constituting the essence of operations at the Defendant DÉJÀ VU nightclubs.  While some (and certainly not all) Defendant DÉJÀ VU nightclubs sell beverages to patrons viewing Plaintiffs' performances, these sales are incidental to the DEJA VU clubs' primary function of providing live exotic entertainment.

69.     Plaintiffs are informed and believe, and on that basis allege, that in perpetrating the actions and omissions alleged herein, Defendant DÉJÀ VU nightclubs jointly acted and continue

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

- 13 -

1    to act pursuant to, and in furtherance of a policy and practice of illegally refusing to pay Plaintiffs

2    the minimum wages guaranteed to them as employees under the laws of the United States, the

3    State of California, and the City and County of San Francisco.

4         70.    Defendant DÉJÀ VU nightclubs denied and continue to deny Plaintiffs' knowledge

5    of their fundamental employees' right to minimum federal wages and living wages by illegally

6    failing to post in the Plaintiffs' work areas federal, state, and municipal wage notices.

7         71.    Plaintiffs are informed and believe, and on that basis allege, that in perpetrating the

8    actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted, and

9    continue to act pursuant to, and in furtherance of a concerted policy and practice of illegally

10   refusing to pay Plaintiffs overtime wages to which they are entitled as employees.

11        72.    Defendant DÉJÀ VU nightclubs denied and continue to deny Plaintiffs' knowledge

12   of their employees' right to premium overtime wages by illegally failing to post required notices

13   in the Plaintiffs' work areas.

14        73.    Because Defendant DÉJÀ VU nightclubs failed and continue in their failure to

15   comply with minimum and overtime wage laws, Plaintiffs necessarily earned their livelihood

16   exclusively through tips voluntarily given directly to them from patrons enjoying their exotic

17   dance performances.

18        74.    However, Defendant DÉJÀ VU nightclubs, and each of them, illegally took

19   portions of those tips as well.

20        75.    Defendant DÉJÀ VU nightclubs' management staff monitored and continue to

21   monitor Plaintiffs' interaction with patrons and required them to surrender a portion of these tips,

22   by the end of each work shift and in cash without a receipt or other paper record, under the threat

23   of being disciplined or terminated.

24        76.    Defendant DÉJÀ VU nightclubs frequently identified and continue to identify this

25   illegal demand for Plaintiffs' tips as a "stage fee," and require Plaintiffs to pay this fee based on

26   the number of patrons with whom they interacted whether or not the patron actually tipped.

27        77.    Plaintiffs are informed and believe that in perpetrating the actions and omissions

28   alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to

1   and in furtherance of a concerted policy and practice of illegally and systematically seizing tips

2   provided directly to Plaintiffs by patrons.

3       78.     Plaintiffs are informed and believe that in perpetrating the actions and omissions

4   alleged herein, that Defendant DÉJÀ VU nightclubs also jointly acted and continue to act pursuant

5   to and in furtherance of a policy and practice of illegally failing to compensate Plaintiffs' expenses

6   for instrumentation necessary for their employment.

7       79.     Defendant DÉJÀ VU nightclubs failed to reimburse, and continue to fail to

8   reimburse Plaintiffs for necessary instrumentation required for their employment including such

9   items as costumes, specialized cosmetics, props and the illegal "stage fees" that Defendants

10  themselves charge as a condition of employment.  Plaintiffs who fail to provide their own

11  necessary instrumentation were and remain subject to discipline or termination for failing to

12  maintain the appearance required by their Defendant DÉJÀ VU nightclub employers.

13      80.     Plaintiffs are informed and believe that in perpetrating the actions and omissions

14  alleged herein, that Defendant DÉJÀ VU nightclubs, and each of them, jointly acted, and continue

15  to act pursuant to and in furtherance of a concerted policy and practice of illegally failing to make

16  required payments to the employer reserve account of the California Unemployment Insurance

17  Fund.

18      81.     Defendant DÉJÀ VU nightclubs further intentionally denied and continue to deny

19  Plaintiffs knowledge of their fundamental employees' rights to unemployment and disability

20  insurance protections by illegally failing to post required notices in the Plaintiffs' work areas.

21      82.     Plaintiffs are informed and believe that in perpetrating the actions and omissions

22  alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to,

23  and in furtherance of a concerted policy and practice of illegally failing to provide required

24  workers' compensation and disability insurance.

25      83.     Plaintiffs are informed and believed that Defendant DÉJÀ VU nightclubs illegally

26  failed to provide workers compensation or disability benefits to employee dancers injured in the

27  course of their employment.

28

84.     Defendant DÉJÀ VU nightclubs further denied and continue to deny Plaintiffs knowledge of their rights to workers' compensation and disability insurance protections by illegally failing to post required notices in the Plaintiffs' work areas.

85.     Defendant DÉJÀ VU nightclubs further denied and continue to deny Plaintiffs knowledge of their fundamental employees' rights to Social Security protections by illegally failing to post required notices in the Plaintiffs' work areas.

86.     Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to and in furtherance of a concerted policy and practice of illegally failing maintain all required records of Plaintiffs' employment.

87.     Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to and in furtherance of a concerted policy and practice of illegally failing provide Plaintiffs with itemized pay stubs identifying pay and deductions from pay.  During their respective periods of employment, Plaintiffs never received any such itemized pay stubs.

88.     Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to and in furtherance of a concerted policy and practice of illegally failing provide Plaintiffs W2 tax forms.

89.     Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to and in furtherance of a policy and practice of illegally failing to post necessary notices advising Plaintiffs of their rights as employees in prominent areas of their work spaces.

90.     To the contrary, Defendant DÉJÀ VU nightclubs have frequently posted notices of their own that misstate Plaintiffs' rights and their inability to seek administrative or judicial remedies to guarantee their fundamental employees' rights.

91.     Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to

1   and in furtherance of a policy and practice of illegally threatening Plaintiffs with disciplinary

2   action or termination for asserting their fundamental employees' rights on an individual basis.

3         92.    Plaintiffs are informed and believe that in perpetrating the actions and omissions

4   alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to

5   and in furtherance of a policy and practice of illegally failing to pay Social Security taxes.

6         93.    Specifically, Defendant DÉJÀ VU nightclubs denied, and continue to deny

7   Plaintiffs knowledge of their fundamental employees' rights to Social Security protections by

8   illegally failing to post required notices in the Plaintiffs' work areas.

9         94.    Plaintiffs are informed and believe that in perpetrating the actions and omissions

10  alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to

11  and in furtherance of a policy and practice of illegally failing to provide Plaintiffs with break

12  period for rest or for meals.

13  **ALLEGATIONS OF RACIAL DISCRIMINATION**

14        95.    Plaintiffs are informed and believe that in perpetrating the actions and omissions

15  alleged herein, that Defendant DÉJÀ VU nightclubs discriminated and continue to discriminate

16  against African American, Latin American and other non-Caucasian dancers because of their race.

17        96.    Defendant DÉJÀ VU nightclubs LARRY FLYNT'S HUSTLER CLUB,

18  ROARING 20's, MARKET STREET CINEMA, CENTERFOLDS, GOLD CLUB, CENTURY

19  THEATER and LA GALS – are open daytimes.  However, night shift employment is

20  exponentially more lucrative for dancers.  On information and belief, these nightclubs require

21  African American, Latin American and other dancers of non-Caucasian ethnicity to work the less

22  lucrative dayshifts.  However, because of the lack of other employers in the DÉJÀ VU sphere of

23  influence, the African American and Latin American dancers are forced to accept these terms.

24        97.    Specifically, Plaintiff JANE ROE NUMBER FOUR, while working at Defendant

25  LARRY FLYNT'S HUSTLER CLUB, was largely restricted to working day shifts with other

26  non-Caucasian dancers.  When the night shift began, she and other non-Caucasian dancers were

27  forced to leave when Caucasian dancers arrived.  Similarly situated African American and Latin

28

American dancers have been subjected to and continue to be subjected to this same discriminatory employment practice while employed at Defendant DÉJÀ VU nightclubs.

### ALLEGATIONS OF RETALIATION FOR UNIONIZATIZION AND ASSERTING OTHER RIGHTS

98.     Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to and in furtherance of a policy and practice of illegally threatening Plaintiffs with disciplinary action or termination for asserting their fundamental employees' rights through asserting the benefits of unionization.

99.      Plaintiffs are informed and believe that in perpetrating the actions and omissions alleged herein, that Defendant DÉJÀ VU nightclubs jointly acted and continue to act pursuant to and in furtherance of a policy and practice of "blacklisting" employees for asserting their fundamental employees' rights or rights to unionize.

100.     Plaintiff JANE ROE NUMBER TWO was terminated from the Defendant HUNGRY I nightclub when management staff learned that she was a member of the local dancers' union, a fact that she asserted when refusing to pay "stage fees" illegally required by management as a condition of her employment.

101.     As another example, management staff at Defendant LARRY FLYNT'S HUSTLER CLUB Plaintiff JANE ROE NUMBER FOUR explicitly warned her that any dancer asserting her employees' rights in Court would be identified by management and be permanently barred from performing in the San Francisco market.

102.     Defendant DÉJÀ VU nightclubs have been targeted by numerous administrative and judicial actions resulting in adverse rulings, and in some instances their own admissions, that Plaintiffs are employees entitled to assert their fundamental employees' rights and to recover for past violations.

103.     On information and belief, no dancer who has asserted her fundamental employees' rights through an administrative or judicial action has been permitted to continue her employment or to perform in Defendant DÉJÀ VU nightclubs following these assertions.

## ALLEGATIONS OF ILLEGAL MARKET CONTROL
## AND OTHER UNFAIR BUSINESS PRACTICES

104.    Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR, along with approximately sixty similarly-situated persons, now co-own, work at and lawfully operate a unionized nightclub that features nude and semi-nude female dancing.  Their compliance with federal, state and municipal laws necessarily incurs significant expenditures of time and money, and places them at a significant business disadvantage to Defendant DÉJÀ VU nightclubs, which are operating in violation of numerous federal, state and municipal laws as alleged above.  Accordingly, Defendants' competitors are forced to decide whether to engage in the illegal practices themselves, or to be subject to the unfair competition that is inherent when one company obeys the law and the other breaks any law it wishes.

105.    Defendant DÉJÀ VU nightclubs compound their unfair business practices through their domination of the relevant San Francisco market, set forth in allegations 50 through 58, and their ownership of illegally-operating clubs nationwide that DÉJÀ VU, INC. advertises on its internet website at dejavu.com.

106.    Defendant DÉJÀ VU, INC.'s website indicates that they are engaged in interstate commerce, as it states that they maintain nightclubs "From Coast To Coast," and lists profiles for each of the DÉJÀ VU nightclubs throughout California, Colorado, Hawaii, Florida, Illinois, Kentucky, Maryland, Indiana, Louisiana, Michigan, Minnesota, New York, Nevada, Ohio, Tennessee and Washington, in addition to France and Canada.  Defendant DÉJÀ VU, INC.'s website also advertises other services, including escort services, sexual novelty items, pornographic magazines, pornographic videos, access to pornographic "webcams," and numerous other erotic commercial services.

107.    DÉJÀ VU, INC.'s website further solicits "independent contractor" applications from women to apply for jobs as nude and semi-nude dancers in DÉJÀ VU nightclubs.

108.    Defendant DÉJÀ VU nightclubs in fact recruit dancers internationally and have provided illegal identification documents in order to facilitate employment of dancers who lack United States citizenship.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

109.    On information and belief, the women who submit them are applying for the same illegal employment set forth above and further prejudicing the ability of lawful operators such as Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR to fairly compete in the business market they unfortunately share with Defendant DÉJÀ VU nightclubs.

<div align="center">

**ALLEGATIONS OF DEFENDANTS' KNOWLEDGE OF**
**THE ILLEGALITY OF THEIR ACTIONS**

</div>

110.    Defendants, and each of them know that their dancers are legally employees rather than independent contractors.

111.    Defendants, and each of them, have been informed by the State of California's Labor Commissioner, by a letter dated October 10, 1997, that their stage fees and refusal to pay their dancers wages violated state law.  Defendants nonetheless continued illegally charging their dancers stage fees, and illegally refusing to pay them wages.

112.    On numerous occasions, Defendant DÉJÀ VU nightclubs have been successfully sued in administrative actions before the California Labor Commissioner for their illegal stage fees and refusal to pay wages.  Defendants nonetheless continued illegally charging their dancers stage fees, and illegally refusing to pay them wages.

113.    On numerous occasions, Defendant DÉJÀ VU nightclubs have been successfully sued in California Superior Court for their illegal stage fees and refusal to pay wages.  Defendants nonetheless continued illegally charging their dancers stage fees, and illegally refusing to pay them wages.

<div align="center">

**FIRST CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

**FEDERAL MINIMUM WAGE VIOLATIONS**

</div>

114.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

115.    The Fair Labor Standards Act provides that a private civil action may be brought for the non-payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by any employee on behalf of him or herself himself and

others employees similarly situated pursuant to 29 U.S.C. § 216(b).  Moreover, Plaintiffs may recover the attorneys' fees incurred in enforcing their rights pursuant to 29 U.S.C. § 216(b). Federal district courts further have the authority to fashion injunctive relief pursuant to 29 U.S.C. § 217.

116.    At all times relevant to this Complaint, Defendants employed Plaintiffs, but willfully failed to pay them minimum wages, or any wages whatsoever.  In fact, Defendants required that Plaintiffs actually pay them in order to work.

117.    Therefore, Plaintiffs seek on behalf of themselves and all others similarly situated unpaid minimum wages at the required legal rate, reimbursement of their stage fees, liquidated damages, interest, attorney's fees and costs, and all other costs and penalties allowed by law. Plaintiffs further seek injunctive relief to compel Defendants to recognize Plaintiffs' employee states, to provide all payment guaranteed to Plaintiffs by law and for this Court's continuing jurisdiction to enforce compliance.

## SECOND CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## STATE MINIMUM WAGE VIOLATIONS

118.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

119.    California Labor Code §§ 218, 218.5 and 1194(a) provide for a private right of action for nonpayment of wages without first filing a claim with the Division of Labor Standards Enforcement and may recover the unpaid balance of the full amount of such wages, together with costs of suit, as welt as liquidated damages, interest thereon, and the attorneys' fees and costs incurred in enforcing the employees' rights.  California Labor Code § 1194.5 further grants courts the authority to enjoin violations of this statute.

120.    At all times relevant to this Complaint, Defendants employed Plaintiffs but willfully failed to pay them minimum wages or any wages whatsoever.  In fact, Defendants required that Plaintiffs actually pay them in order to work.

121.    Therefore, Plaintiffs seek on behalf of themselves and all others similarly situated unpaid minimum wages at the required legal rate, reimbursement of their stage fees, liquidated

WILLIAMS WALSTON
225 Bush Street, 16ᵗʰ Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

damages, interest, attorney's fees and costs, and all other costs and penalties allowed by law. Plaintiffs further seek injunctive relief to compel Defendants to recognize Plaintiffs' employee states, to provide all payment guaranteed to Plaintiffs by law and for this Court's continuing jurisdiction to enforce compliance.

### THIRD CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### MUNICIPAL MINIMUM-WAGE VIOLATIONS

122.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

123.     Until January 1, 2005, Chapter 12R of the San Francisco Administrative Code guarantees all employees working within the City and County of San Francisco the right to a living wage in the amount of $8.50 per hour.  Beginning January 1, 2005, the Minimum Wage Ordnance established a minimum wage of $8.62 per hour.  Lesser minimum wage rates apply to small businesses employing fewer than ten persons.  On information and belief, all Defendants DÉJÀ VU nightclubs, and each of them, employ more than ten workers.

124.     At all times relevant to this Complaint, Defendants employed Plaintiffs but willfully failed to pay them minimum wages pursuant to the Minimum Wage Ordnance or any wages whatsoever.  In fact, Defendants required that Plaintiffs actually pay them in order to work.

125.     Plaintiffs seek on behalf of themselves and all others similarly situated unpaid Minimum Wage Ordnance wages at the required legal rate, reimbursement of their stage fees, liquidated damages, interest, attorney's fees and costs, and all other costs and penalties allowed by law.  Plaintiffs further seek injunctive relief to compel Defendants to recognize Plaintiffs' employee states, to provide all payment guaranteed to Plaintiffs by law and for this Court's continuing jurisdiction to enforce compliance.

### FOURTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### FAILURE TO PAY OVERTIME AS REQUIRED BY FEDERAL LAW

126.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

127.   At all time relevant to this complaint, Defendants, and each of them, have been and/or are employers engaged in commerce, as those terms are defined in 29 U.S.C. §§ 203(b) and (d).  As such, Defendants employed Plaintiffs as dancers, which engaged the employees in commerce as those terms are defined in 29 U.S.C. §§ 203(b), (e) and (g) and in 29 U.S.C. § 207(a)(1).

128.   Defendants have required, and do require Plaintiffs, as part of their employment, to work without additional compensation, such as overtime, in excess of the forty hour per week maximum established by 29 U.S.C. § 207(a)(1).

129.   At all times relevant to this Complaint, Plaintiffs were employed by Defendants but were paid not paid overtime wages for overtime hours worked.

130.   Plaintiffs request that Defendants be required to pay them, and all those similarly situated, all overtime wages illegally withheld, an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b) and Plaintiffs' attorneys fees and costs pursuant to 29 U.S.C. § 216(b).

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### FAILURE TO PAY OVERTIME AS REQUIRED BY STATE LAW

131.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

132.   At all times relevant to the Complaint, IWC Wage Order No. 4 (8 Cal. Code Regs. § 11040) required the payment of an overtime premium for hours worked in excess of 40 in a workweek.  For the period commencing January 1, 2000 to present, IWC Wage Order No. 4 and California Labor Code § 510 required payment of overtime premium(s) for hours worked in excess of 8 in a workday, 40 in a workweek, or on the seventh day worked in a single workweek. This premium increases to double-time for all hours worked over twelve in a workday or eight on the seventh day worked in a single workweek.

133.   At all times relevant to this Complaint, Plaintiffs and all other persons similarly situated were employed by Defendants within the State of California but were not paid overtime wages for overtime hours worked.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

134.   Defendants have willfully failed to pay to these Plaintiffs accrued overtime, including by failing to pay overtime within the 30 day time limit set forth for the payment of termination wages under California Labor Code §§ 201-203. Defendants have therefore breached their duties to these Plaintiffs under California Labor Code §§ 201-203 and 510 *et seq.* and California Industrial Welfare Commission Wage Orders.

135.   Plaintiffs request that Defendants be required to pay them, and all those similarly situated, all overtime wages illegally withheld, penalties as provided under the California Labor Code including §§ 201-203, 510 and 1194.1(a) *et seq.*, and punitive/exemplary damages, and Plaintiffs' attorneys fees and costs under California Labor Code § 218.5 and 1194(a).

### SIXTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### STATUTORY PENALTIES FOR FAILURE TO TIMELY PAY WAGES

136.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

137.   To ensure that employers comply with the laws governing the payment of wages when an employment relationship ends, California Labor Code § 203 provides for the assessment of a penalty against the employer when there is a willful failure to pay wages due to the employee at conclusion of the employment relationship.

138.   As alleged above, Defendants, and each of them, employed Plaintiffs and hundreds if not thousands of similarly situated dancers, and did not pay them wages.  As further alleged above, Defendants, and each of them, intentionally engaged in this conduct despite the fact that they knew it was unlawful and had sole ability to correct the illegalities.

139.   Accordingly, Plaintiffs, as well as all those similarly situated, are entitled to statutory penalties under California Labor Code § 203.

### SEVENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### UNLAWFUL COLLECTION OF GRATUITIES

140.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

141.   California Labor Code § 351 provides that no employer shall collect, take or receive any gratuity or a part thereof that is paid, given to or left to an employee by a patron. Section 351 further provides that gratuities left to an employee are the sole property of the employee to whom the gratuities were paid.

142.   At all time relevant to this Complaint, Plaintiffs subsisted solely off of the gratuities paid directly to them by patrons because Defendants refused to pay them wages. Plaintiff were required to pay Defendants portions of these gratuities as "stage fees," "fines," "tip outs" or other sham terms as a condition of their employment.  Plaintiffs failing to pay Defendants a portion of their gratuities were disciplined or terminated.

143.   Defendants knew that their policies and practices violated and continue to violate California Labor Law §§ 351, 450, 1197 and 1198 and Industrial Welfare Commission Order 10-2001.  Defendants' actions were accordingly malicious, oppressive and intentionally committed with wrongful intent and in conscious disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

<div align="center">

**EIGHTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

**COLLECTION OF ILLEGAL STAGE FEES**

</div>

144.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

145.   At all times relevant to this Complaint, Defendants illegally collected "stage fees" from Plaintiffs in violation of California Labor Code § 450.  Defendants exacerbated their illegal conduct by compelling payment of these fees from the sole means of income permitted to their employee:  the gratuities paid to them by patrons.  This illegal seizure of Plaintiffs' gratuities further violated California Labor Code § 351.

146.   Defendants knew or had reason to know that their policies and practices violated and continue to violate California Labor Law §§ 351 and 450.  Defendants' actions were accordingly malicious, oppressive and intentionally committed with wrongful intent and in conscious disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

## NINTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

## FRAUD

147.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

148.    Defendants and each of them have perpetuated and continue to perpetuate a conspiracy to defraud Plaintiffs of their rights under federal and state law as detailed in this Complaint.  Defendants' representations that their employee dancers were independent contractors were and continue to be false, misleading and designed to defraud these employees of their fundamental employees' rights.  Defendants' use of sham "independent contractor" contracts as a requirement for employment served to conceal Defendants' individual fraud and collective conspiracy.

149.    Plaintiffs justifiably relied upon Defendants' representations until they sought the advice of counsel after hearing through acquaintances that the exotic dancing industry within the City and County of San Francisco was operating illegally as to its employee dancers.  Until then, Plaintiffs lacked any legal knowledge or training and relied upon Defendants assertions, as their employers in all ways but name, as to their rights.

150.    Had Plaintiffs known of their rights, they would have demanded that Defendants provide them with the fundamental rights guaranteed to all employees as described in this Complaint.   Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR presently enforce these rights as to themselves and other dancer employed by the exotic dancing establishment that they co-own.

151.    As a direct a proximate result of Defendants' fraud and conspiracy to defraud, Plaintiffs, and each of them, as well as all those similarly situated, have been damaged in amounts to be proven at trial.

152.    In perpetrating this fraud and conspiracy to commit fraud, Defendants acted oppressively and maliciously with a wanton disregard for Plaintiffs' rights, as well as the rights of all those similarly situated.  Therefore, Plaintiffs, and all those similarly situated, are entitled to exemplary and punitive damages.

## TENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

## CONVERSION

153.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

154.     Pursuant to statute, including but not limited to the California Labor Code and the California Penal Code, it is a violation of law to fail to pay earned wages on the next pay day after they are earned.  Pursuant to California Labor Code § 216, it is a misdemeanor for the employer to keep the wages and not pay them to the employee from the next pay day forward, as after the wages are earned, they become the property of the employee as a matter of law.

155.     By failing to pay the wages on that pay day and retaining the sums earned by the employee, Defendants wrongfully exercised dominion over the property of Plaintiffs and all persons similarly situated.  Further, once Defendants thereafter applied the monies to their own use, the conversion became complete as defined by California Civil Code §§ 3294 and 3336.

156.     In failing to pay said monies to Plaintiffs and each class member and retaining that money for their own use, Defendants have acted with malice, oppression, or conscious disregard for the statutory rights of Plaintiffs and each class member.  Such wrongful and intentional acts, given the number of victims and the number of acts and previous claims and/or lawsuits relative to similar acts, justify awarding Plaintiffs and/or the Class members punitive damages pursuant to California Civil Code § 3294 *et seq*. in an amount sufficient to deter future similar conduct by Defendant.

## ELEVENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

## COMPELLING ILLEGAL CONDITIONS OF EMPLOYMENT

157.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

158.     California Labor Code § 432.5 provides that no employer shall require any employee to agree, in writing or otherwise, to any term of condition known to the employer to be prohibited by law.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

159.    Defendants violated section 432.5 by requiring Plaintiffs to sign shame "independent contractor" agreements while knowing that subjecting employees to this fraudulent title as a means of withhold minimum wage and premium overtime pay violated California Labor Code §§ 1197 and 1198 and Industrial Welfare Commission Order No. 10-2001 (Cal. Code Regs., tit. 8, § 11100), that illegal "stage fees" and other payments derived from gratuities violated California Labor Code §§ 351 and 340, as well as each of the other violations of Plaintiffs' fundamental employees' rights as identified in this Complaint.

160.    Defendants' actions were accordingly malicious, oppressive and intentionally committed with wrongful intent and in conscious disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

**TWELFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

**RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

161.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

162.    Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.*, bars employers from discriminating against any person with respect to their compensation or other terms and conditions of their employment on the basis of that person's race, color, religion, sex or national origin.

163.    As alleged in paragraphs 95 through 97, on information and belief, Defendants have required, and continue to require, Plaintiff Subclass Two non-Caucasian dancers to work less lucrative "day shifts," and allow Caucasian dancers to work more lucrative day shifts.  The dancers' racial backgrounds and ethnicities is the sole basis of this decision.  Further, Plaintiff JANE ROE NUMBER THREE, who is African American, has specifically been subject to this discrimination while employed at Defendant LARRY FLYNT'S HUSTLER CLUB.  As a result, she was forced to work for less money than Caucasian dancers.

164.    On information and belief, Defendants, and each of them, knew that they were discriminating on the basis of race in violation of applicable law, and therefore acted with malice and/or with reckless indifference to Plaintiff JANE ROE NUMBER THREE's protected rights.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

1  Accordingly, on her own behalf and on behalf of all similarly situated members of Subclass 2,

2  Plaintiff JANE ROE NUMBER THREE seeks back pay, lost wages, and all other available

3  compensatory damages, punitive damages, a permanent injunction barring Defendants, and each

4  of them, from discriminating against their employees on the basis of race, and any and all other

5  available remedies under 42 U.S.C. § 2000e, *et seq.*

6  <center>**THIRTEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**</center>

7  <center>**RACIAL DISCRIMINATION IN VIOLATION OF**

8  **THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**</center>

9  165.  Plaintiffs hereby reallege and incorporate by reference all paragraphs above as

10  though fully set forth in detail herein.

11  166.  The California Fair Employment and Housing Act, codified at California

12  Government Code Sections 12900 *et seq.*, prohibits an employer from discriminating against any

13  employee because of that employee's race.

14  167.  As alleged in paragraphs 95 through 97, on information and belief, Defendants

15  have required, and continue to require, non-Caucasian dancers to work less lucrative "day shifts,"

16  and allow Caucasian dancers to work more lucrative day shifts.  The dancers' racial backgrounds

17  and ethnicities is the sole basis of this decision.  Further, Plaintiff JANE ROE NUMBER THREE,

18  who is African American, has specifically been subject to this discrimination while employed at

19  Defendant LARRY FLYNT'S HUSTLER CLUB.  As a result, she was forced to work for less

20  money than Caucasian dancers.

21  168.  Accordingly, on her own behalf and on behalf of all similarly situated members of

22  Subclass 2, Plaintiff JANE ROE NUMBER THREE seeks compensatory damages, including but

23  not limited to her lost wages, punitive damages, a permanent injunction barring Defendants, and

24  each of them, from discriminating against their employees on the basis of race, and any and all

25  other available remedies under California Government Code Sections 12900 *et seq.*

26

27

28

**FOURTEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

**UNFAIR BUSINESS PRACTICES UNDER STATE LAW**

169.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

170.    Defendants are engaging in numerous anticompetitive, illegal business practices, including retaliating against dancers who attempt to unionize or otherwise assert their rights, discriminating against employees on the basis of race, failing to pay Plaintiffs wages or premium overtime wages, to produce or maintain employment and payroll records, to provide workers' compensation, unemployment insurance or disability insurance, to withhold employees' federal or state taxes and failure to pay required matching taxes, and to respect Plaintiffs' tips as their personal property rather than seizing a portion of these tips or other monies as a term of employment.

171.    Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR are co-owners and co-operators of a competing adult entertainment establishment specializing in live nude and semi-nude female dance performances, which operates in compliance with federal, state and municipal requirements. Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR directly harmed in operating their business as Defendants' illegal practices place their law-abiding establishment at a significant competitive disadvantage.

172.    The remaining Plaintiffs are dancers employed by Defendants who are denied the fundamental protections guaranteed to employees under federal, state and municipal law due to Defendants' illegal and anti-competitive business practices.  The remaining Named Plaintiffs are further harmed as Defendants' dominance over their chosen profession in the relevant San Francisco market hinders the conditions of employment throughout the market, and specifically hinders their ability to seek alternative employers, to freely market their services or to assert their fundamental employees' rights without the threat of disciplinary action, retaliatory termination and blacklisting.

173.    Defendants' conduct constitutes an unfair business practice as defined in California Business and Professions Code §§ 17200 *et seq.*  This Court has authority pursuant to California Business and Professions Code § 17203 to "make such orders. . . , as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Moreover, this Court possesses the inherent power to craft such injunctive relief as may be necessary to protect the interests of the parties pending trial of this matter on the merits.  Plaintiffs may recover the attorneys fees incurred in enforcing their rights pursuant to California Code of Civil Procedure § 1021.5.

174.    Defendants' conduct was, and is, unfair within the meaning of California Business and Professions Code §§ 17200 *et seq.* because that conduct causes significant harm to Plaintiffs and is in no way counterbalanced by legitimate utility to Defendant. In addition, the conduct offends established legislatively declared public policy and was immoral, unethical, oppressive, or unscrupulous.  Defendants' conduct of employing Plaintiffs through sham "independent contractor" agreements, failing to post required employees' rights notices and making affirmative misstatements as to those rights and employees' abilities to enforce their rights constitutes a fraudulent and deceptive practice.

175.    Plaintiffs, and all persons similarly situated, have no plain, speedy, and/or adequate remedy at law to redress the injuries they have suffered as a consequence of Defendants' unfair, unlawful, and/or fraudulent business practices.  As a result of the unfair, unlawful, and/or fraudulent business practices described herein, Plaintiffs, all persons similarly situated and all persons in interest have suffered and will continue suffering irreparable harm unless Defendants are restrained from engaging in these unfair, unlawful, and/or fraudulent business practices.

176.    Plaintiffs, and all those similarly situated, are accordingly entitled to restitution of monies due, disgorgement of the ill-gotten gains obtained by Defendants, a preliminary and permanent injunction enjoining Defendants from continuing the unlawful and unfair practices described above, and to such other equitable relief as is appropriate under California Business and Professions Code § 17203, and entitled to the fees and costs incurred in vindicating their rights

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

and the public interest generally pursuant to California Code of Civil Procedure §1021.1 and any

other applicable law.

### FIFTEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

### UNFAIR COMPETITION UNDER THE SHERMAN ACT

177.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as

though fully set forth in detail herein.

178.    As specifically set forth in paragraphs 104 through 109, Defendant DÉJÀ VU, INC.

and its nightclubs are, through illegal means, restricting and diminishing the legitimate business

trade and commerce of its competitors in the San Francisco Bay Area, as well as other major

cities' adult nightclub markets.

179.    As specifically set forth in paragraphs 104 through 109, across the United States,

Defendant DÉJÀ VU, INC., and its subsidiary DÉJÀ VU nightclubs and other business entities are

undertaking many of the same illegal practices that are subject of this complaint.

180.    Through the aforementioned actions, Defendant DÉJÀ VU, INC. is taking

concerted action in an attempt to unreasonably and unfairly restrain competition and to

monopolize in violation of 15 U.S.C. §§ 1, 2.

181.    The aforementioned actions have caused, and is causing, harm to Plaintiffs

KIMBERLY JONES, JANE ROE NUMBER ONE, JANE ROE NUMBER TWO, JANE ROE

NUMBER THREE, JANE ROE NUMBER FOUR, JANE ROE NUMBER FIVE, and similarly

situated dancers, because each and all of them are forced to live with the aforementioned adverse

impact market caused by Defendants' illegal conduct.

182.    Specifically, as alleged in paragraphs 105 through 109, Defendants' competitors

are forced to decide whether to engage in the illegal practices themselves, or to be subject to the

unfair competition that is inherent when one company obeys the law and the other breaks any law

it wishes.  Concomitantly, Plaintiffs must choose whether to work for a club that violates their

rights as employees, or whether to work for a club that loses business (and is therefore less

lucrative) because it does not violate those rights.

183.   Defendants' aforementioned actions are additionally harmful to Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR, as they now co-own and work at a lawfully-operating nightclub that features nude female dancing.  A lawfully-operated business cannot fairly compete with another business' illegal operations, particularly when the latter dwarfs its smaller competitor and dominates the local market.  Approximately sixty similarly situated co-owners of this competitor nightclub have lost and continue to lose significant business because of the Defendants' aforementioned illegal actions.

184.   On information and belief, Defendants' aforementioned actions tend to and are reasonably calculated to prejudice public interest in equal application of the rule of law and in a competitive free market.

185.   Plaintiffs, and all those similarly situated, are accordingly entitled to restitution of monies due, disgorgement of the ill-gotten gains obtained by Defendants, a preliminary and permanent injunction enjoining Defendants from continuing the unlawful and unfair practices described above, and to such other equitable relief as is appropriate under California Business and Professions Code § 17203, and entitled to the fees and costs incurred in vindicating their rights and the public interest generally under 15 U.S.C. §§ 1, 2 and any other applicable law.

### SIXTEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

186.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

187.   Defendants' policy and practice of threatening retaliatory termination and the blacklisting of dancers who assert their employees' rights constitutes intentional and tortuous interference with each of Plaintiffs' economic gain and ability to perform in their chosen profession, as Defendants' dominance over their chosen profession in the relevant San Francisco market hinders the conditions of employment throughout the market, and specifically hinders their ability to seek alternative employers, to freely market their services or to assert their fundamental employees' rights without the threat of disciplinary action, retaliatory termination and blacklisting.

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

188.     On information and belief, Defendants, and each of them, know of the impact their illegal activities are having on Plaintiffs and all those similarly situated, yet they continue their practices nonetheless.

189.     Further, Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR are co-owners and co-operators of a competing adult entertainment establishment specializing in live nude and semi-nude female dance performances, which operates in compliance with federal, state and municipal requirements. Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR directly harmed in operating their business as Defendants' illegal practices place their law-abiding establishment at a significant competitive disadvantage.

190.     Defendants' conduct constitutes a tortuous interference with the economic relations of Plaintiffs, as well as all those similarly situated.  As a result of the unfair, unlawful, and/or fraudulent business practices described herein, Plaintiffs, all persons similarly situated and all persons in interest have suffered and will continue suffering irreparable harm unless Defendants are restrained from engaging in these tortuous, unlawful, and/or fraudulent business practices.

191.     Plaintiffs, and all those similarly situated, are accordingly entitled to compensatory damages, including buy not limited to compensation for lost wages, lost business, monies due, disgorgement of the ill-gotten gains obtained by Defendants, punitive damages, a preliminary and permanent injunction enjoining Defendants from continuing the tortuous and unlawful practices described above, and such other equitable relief as is appropriate.

## SEVENTEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## NEGLIGENT INTERFERENCE WITH ECONOMIC RELATIONS

192.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

193.     Defendants' policy and practice of threatening retaliatory termination and the blacklisting of dancers who assert their employees' rights constitutes intentional and tortuous interference with each of Plaintiffs' economic gain and ability to perform in their chosen profession, as Defendants' dominance over their chosen profession in the relevant San Francisco

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

1  market hinders the conditions of employment throughout the market, and specifically hinders their

2  ability to seek alternative employers, to freely market their services or to assert their fundamental

3  employees' rights without the threat of disciplinary action, retaliatory termination and blacklisting.

4      194.    On information and belief, Defendants, and each of them, know or should know of

5  the impact their illegal activities are having on Plaintiffs and all those similarly situated, yet they

6  continue their practices nonetheless.

7      195.    Further, Plaintiffs JANE ROE NUMBER TWO, JANE ROE NUMBER THREE

8  and JANE ROE NUMBER FOUR are co-owners and co-operators of a competing adult

9  entertainment establishment specializing in live nude and semi-nude female dance performances,

10  which operates in compliance with federal, state and municipal requirements. Plaintiffs JANE

11  ROE NUMBER TWO, JANE ROE NUMBER THREE and JANE ROE NUMBER FOUR

12  directly harmed in operating their business as Defendants' illegal practices place their law-abiding

13  establishment at a significant competitive disadvantage.

14      196.    Defendants' conduct interferes with the economic relations of Plaintiffs, as well as

15  all those similarly situated.  As a result of the unfair, unlawful, and/or fraudulent business

16  practices described herein, Plaintiffs, all persons similarly situated and all persons in interest have

17  suffered and will continue suffering irreparable harm unless Defendants are restrained from

18  engaging in these tortuous, unlawful, and/or fraudulent business practices.

19      197.    Plaintiffs, and all those similarly situated, are accordingly entitled to compensatory

20  damages, including buy not limited to compensation for lost wages, lost business, monies due,

21  disgorgement of the ill-gotten gains obtained by Defendants, a preliminary and permanent

22  injunction enjoining Defendants from continuing the tortuous and unlawful practices described

23  above, and such other equitable relief as is appropriate.

24          **EIGHTEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

25          **RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT**

26      198.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as

27  though fully set forth in detail herein.

28

WILLIAMS WALSTON
225 Bush Street, 16th Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

199.   On information and belief, Defendants conspired to, and engaged in, a racketeering scheme, which included numerous acts of wire fraud in an enterprise that affects interstate commerce over an extended period of at least four years.  Defendants fraudulently induced dancers through, their internet site, into a sham adhesion contract purporting to grant them "independent contractor" status but instead resulting in their employment under illegal circumstances denying them their employees' rights as alleged above.

200.   Defendants further engaged in a pattern of fraudulently inducing residents of states other than California, and in some cases foreign citizens, through their internet site into a sham adhesion contract purporting to grant them "independent contractor" status, but instead resulting in their employment under illegal circumstances and denying them their employees' rights as alleged above.  In the case of foreign citizens, on information and belief, Defendants provided false identification to the dancers, in one case fraudulently using another person's social security number, in order to facilitate their fraudulent employment scheme.

201.   Defendants further perpetuated this fraud by threatening dancers with retaliatory termination for asserting their rights or for bringing administrative or judicial actions to enforce their fundamental rights as employees.  On information and belief, Defendants coordinated this policy of threats, harassment and intimidation as a means of illegally extorting dancers.

202.   On information and belief, Defendants further necessarily made use of interstate communications technologies including the telephones and mail service in order to coordinate their fraudulent enterprise.  Defendants include business entities formed under the laws of or operating from California, Michigan, Nevada and Washington and necessarily coordinated their fraudulent enterprise through means other than person-to-person communications.

203.   On information and belief, in order to operate this fraudulent scheme, Defendants conspired to, and did transmit wire communications in interstate commerce, by means of telephone services in violation of 18 U.S.C. §§ 371, 1343, 1346 and the mails in violation of 18 U.S.C. § 1341.   These communications by means of telephone lines constituted a racketeering activity pursuant to 18 U.S.C. § 1961(1)(B).

204.     Plaintiffs were injured in their business and property by means of Defendants'

fraudulent and illegal scheme and, on their own behalf and on behalf of all those similarly situated,

seek treble damages, attorney's fees and costs pursuant to 18 U.S.C. § 1964.  Furthermore,

Defendants' violations of the above federal laws and the effects detailed above are continuing and

will continue unless injunctive relief prohibiting the Defendants' illegal acts constituting a pattern

of racketeering activity is ordered and enforced by this Court.

### NINETEENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

### RESTRAINT ON UNIONIZATION IN VIOLATION OF
### THE NATIONAL LABOR RELATIONS ACT

205.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as

though fully set forth in detail herein.

206.     Under the National Labor Relations Act, codified at 29 U.S.C. § 157 *et seq.*,

employees have a federally protected right to unionize.  Under section 158 of the Act, it is an

illegal business practice for employers to restrain employees' efforts to unionize, to discharge

them for unionizing, or for interfering in their efforts to unionize in any way.

207.     As alleged above, Defendants, and each of them, have and continue to retaliate

against dancers who attempt to unionize.  Defendants' retaliation has included, and continues to

include, terminating the dancer and refusing to employ her at any other Déjà vu nightclub in the

San Francisco market.

208.     In particular, PLAINTIFF JANE ROE NUMBER TWO was terminated from her

employment at DEFENDANT HUNGRY I, because she was a member of a dancers' union, and

because she refused to continue to have illegal stage fees taken from her.

209.     Defendants' aforementioned actions of prohibiting their employees' efforts to

unionize, and retaliating against employees who unionize despite their efforts, violates the

National Labor Relations Act.

210.     Plaintiffs, and all those similarly situated, are therefore entitled to lost wages, back

pay, and all other appropriate compensatory damages, punitive damages, and a permanent

injunction barring Defendants, and each of them, from interfering with their protected rights under the National Labor Relations Act.

## TWENTIETH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## RETALIATORY TERMINATION

211.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

212.     Under California law, it is a common-law tort for an employer to discharge an employee for a reason that violates a fundamental policy expressed in California's statutes or constitution, including laws against unlawful discrimination and employees' rights. *See, e.g., Walrath v. Sprinkel*, 99 Cal.App.4th 1237, 121 Cal.Rptr. 806 (Cal. Ct. App. 2002)

213.     As alleged above, Defendants, and each of them, have and continue to retaliate against dancers who attempt to unionize, or otherwise assert their rights to minimum wage and not have illegal stage fees taken from them.  Defendants' retaliation has included, and continues to include, terminating the dancer and refusing to employ her at any other Déjà vu nightclub in the San Francisco market.  Defendants' actions are malicious because they know their conduct is illegal, yet they continue it anyway.

214.     In particular, PLAINTIFF JANE ROE NUMBER TWO was terminated from her employment at DEFENDANT HUNGRY I, because she was a member of a dancers' union, and because she refused to continue to have illegal stage fees taken from her.

215.     PLAINTIFF JANE ROE NUMBER TWO, and all those similarly situated, are therefore entitled to compensatory damages, including but not limited to lost wages and back pay, and punitive damages.  All Plaintiffs further seek a permanent injunction barring Defendants, and each of them, from discharging employees for asserting their lawful rights.

## TWENTY FIRST CAUSE OF ACTION – AGAINSST ALL DEFENDANTS

## FAILURE TO PROVIDE REST AND MEAL PERIODS
## IN VIOLATION OF STATE LABOR LAW

216.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

217.    Plaintiffs are informed and believe that Defendants' enforce a common practice denying dancer employees the meal breaks and rest breaks required by Labor Code § 512 and Industrial Welfare Commission Wage Order No. 9-2001 ("Wage Order No. 9-2001).  Wage Order No. 9-2001, in item 11, requires that the meal period be completely off-duty or it is counted as time worked unless the employee agrees in writing to an on duty meal period.  Wage Order No. 9-2001, in item 12, requires ten minute rest periods for each 4 hours worked or major fraction thereof, which should insofar as is practicable be allowed in the middle of each work period.

218.    Defendants instead penalized Plaintiffs who took meal breaks or rest breaks, including threatening them with fines and termination, making it difficult or impossible for Plaintiffs to take the meal periods and rest breaks as provided by law. Defendants' conduct was malicious, fraudulent and showed a conscious disregard for Plaintiffs' rights.

219.    Where an employer fails to provide either a rest period or meal break in accordance with the applicable provisions of California Labor Code §§ 512 and 226.7 and Wage Order No. 9-2001, the employer must pay the employee one hour of pay at the employees regular rate of compensation for each workday that the rest period or meal break is not so provided.

220.    As a proximate result of the aforementioned violations, Plaintiffs, and all those similarly situated, have been damaged in an amount according to proof at time of trial.  Plaintiffs request all relief as provided by statute including the additional pay recoverable pursuant to California Labor Code § 218.5, interest recoverable pursuant to California Labor Code § 218.6, any penalties allowed, injunctive relief compelling Defendants to comply with this statute, and the attorneys fees and costs incurred in enforcing their fundamental employees' rights.

**TWENTY SECOND CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

**FAILURE TO PAY ALL COMENSATION DUE AND OWING
AT TIME OF TERMINATION IN VIOLATION OF STATE LABOR LAW**

221.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

222.    California Labor Code § 201 requires an employer who discharges an employee to immediately pay compensation due and owing to said employee upon discharge. California Labor

Code § 202 requires an employer to promptly pay compensation due and owing to a quitting employee within 72 hours of that employee's notice of resignation. California Labor Code § 203 provides that, if an employer willfully fails to pay compensation upon discharge or resignation, the wages of the employee shall continue for a period up to thirty days.

223.   Defendants have willfully failed to pay compensation and wages, including both unpaid overtime pay and meal or rest period wage penalties, to Plaintiffs and all others similarly situated.  Defendants are liable for wage continuation penalties in an amount to be determined at trial. Plaintiffs, and all those similarly situated, are also entitled to payment of their reasonable attorney's fees and costs of suit incurred in recovering the additional pay pursuant to California Labor Code § 218.5, and interest pursuant to California Labor Code § 218.6.

## TWENTY THIRD CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## FAILURE TO MAINTAIN EMPLOYMENT RECORDS

224.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

225.   Under 29 C.F.R. § 825.500, "employers shall make, keep, and preserve records pertaining to their obligations under the [Fair Labor Standards] Act in accordance with the recordkeeping requirements of section 11(c) of the Fair Labor Standards Act (FLSA) and in accordance with these regulations."

226.   As alleged above, Defendants' nightclubs have employed, and continue to employ Plaintiffs, and each of them, as well as hundreds if not thousands of similarly situated dancers.  On information and belief, Defendants, and each of them, routinely fail to maintain any records of their employment.  Further, on at least one occasion, a Déjà Vu nightclub fabricated fraudulent records, using someone else's social security number, in order to employ a dancer who was not a United States citizen.

227.   Accordingly, on their own behalf and on behalf of all those similarly situated, Plaintiffs seek relief against Defendants, and each of them, including estoppel from asserting the lack of employment records as any defense and/or mitigation to the claims brought herein, all compensatory, punitive and other damages that are appropriate, and a permanent injunction

barring Defendants, and each of them, from violating the federal requirement that they maintain employment records for their employees.

### TWENTY FOURTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### FAILURE TO PROVIDE AN ITEMIZED LIST OF DEDUCTIONS

228.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

229.   California Labor Code § 226(a) requires employers to provide an itemized wage statement in writing at the time of the payment of wages.  The itemized statement is to be provided on the detachable portion of the paycheck or the equivalent if payment is made by other means.  Among other things, the itemized statement must accurately reflect gross wages earned, total number of hours worked by hourly employees, and the net wages earned.  All deductions to hours and wages must be itemized in writing on the statement.

230.   Under California Labor Code § 226(a), the failure to fully and accurately itemize deductions constitutes an illegal act whether or not any deductions themselves were unlawful.

231.   Plaintiffs are informed and believe that Defendants deliberately failed to provide a wage statement or itemized deduction of wages in order to conceal their fraudulent systematic denial of Plaintiff's employees' rights.  Defendants' conduct was fraudulent, malicious and showed a conscious disregard for Plaintiffs' fundamental employees' rights.

232.   California Labor Code § 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of four thousand ($4,000).

233.   Plaintiffs request relief as provided by statute, including any penalties allowed, and for injunctive relief compelling Defendants' prospective compliance with California Labor Code § 226(a).

WILLIAMS WALSTON
225 Bush Street, 16ᵗʰ Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint

**TWENTY FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS**

**CIVIL PENALTIES UNDER THE PRIVATE ATTORNEYS GENERAL ACT OF 2004**

234.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

235.    Effective January 1, 2004, California Labor Code § 2699 provides as follows:

> (a) Notwithstanding any other provision of law, and provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions commissions, boards, agencies, or employees, for a violation of this code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees.
> . . .
> (e) For all provisions of this code except for those for which a civil penalty is specifically provides, there is established a civil penalty for a violation of these provisions, as follows: (1) If, at the time of the alleged violation, the person does not employ one or more employees the civil penalty is five hundred dollars ($500). (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.
> (f) An aggrieved employee may recover the civil penalty described in subdivision (e) in a civil action filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs. Nothing in this section shall operate to limit an employee's right to pursue other remedies available under state or federal law, either separately or concurrently with an action taken under this section.

236.    At all times relevant herein California Labor Code § 256, last amended in 1983, has provided: "The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of § 203."

237.    In addition, California Labor Code § 226.3 provides for the imposition of civil penalties on account of violations of California Labor Code § 226(a).

238.    Accordingly, Plaintiffs are, under the California Labor Code, entitled to bring this action, insofar as it is based upon late payment of wages and violations of California Labor Code § 226(a), on behalf of himself and the State of California and is entitled to recover his reasonable attorneys' fees and costs from such Defendants.

**DECLARATORY RELIEF**

239.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

240.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

241.    An actual and ongoing controversy presently exists between the parties concerning their respective duties as to clauses existing in Defendants' illegal "independent contractor" agreement.  Plaintiffs contend that Defendants' illegal adhesion contract is void because (1) Defendants' contract identifying Plaintiffs as "independent contractors" was, and is a sham and illegal under the aforementioned employment-law principles, and (2) that Defendants' illegal adhesion contract was procedurally and substantively unconscionable.  Defendants' adhesion contract is given to Plaintiffs with no time for review, no opportunity for negotiation and poison-pill clauses to insulate Defendants' illegal activity including (1) a mandatory arbitration clause, (2) a clause denying an employer-employee relationship that exists as a matter of law and that permits Defendants to retain illegally-seized gratuities as "fees" should Plaintiffs assert their fundamental employees' rights, (3) a waiver of statute of limitations that serves no purpose other than to permit Defendants to escape liability for the full range of their misconduct, (4) a waiver of bringing class actions that serves no purpose other than permitting Defendants to continue their pattern of retaliating and blacklisting individual dancers who assert their rights and to continue their illegal and unfair business practices otherwise unabated, and (5) the vague nature of the arbitration clause in that Defendants caused an unsophisticated person to sign this clause without the assistance of counsel or the opportunity to review the meaning of these clauses to gain any understanding as to the rights of judicial review, appellate review, broad discovery that would be surrendered.

242.    Plaintiffs note that the members of Plaintiff Subclass One are not presently employed by Defendants and not subject to these provisions insofar as they seek relief from Defendants' unfair business practices.

243.    Defendants' illegal adhesion contract is further barred by the terms of California Civil Code § 1668 which states that "[a]ll contracts which have for their object, directly or

indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

244.   Accordingly, on their own behalf and on behalf of all those similarly situated, Plaintiffs seek a declaratory judgment holding that the aforementioned contract is illegal and unenforceable in its entirety.

WHEREFORE, Plaintiffs KIMBERLY JONES, JANE ROE NUMBER ONE, JANE ROE NUMBER TWO, JANE ROE NUMBER THREE, JANE ROE NUMBER FOUR, and JANE ROE NUMBER FIVE, on behalf of themselves and all those similarly situated, pray for relief as follows:

1.   For nominal damages;

2.   For compensatory damages;

3.   For restitution of all monies due to Plaintiffs, and disgorged profits from the unlawful, unfair or fraudulent business practices of Defendants;

4.   For statutory damages and/or penalties as allowed by federal, state and municipal wage and hour statutes and regulations;

5.   For accrued interest;

6.   For costs of suit and expenses incurred herein;

7.   For reasonable attorney's fees;

8.   Punitive and exemplary damages in an amount commensurate with defendants' ability to pay and sufficient to deter such conduct in the future;

9.   For declaratory and permanent injunctive relief, as well as this Court's continuing jurisdiction to compel compliance; and

10.   For all other and further relief that the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of

3   Civil Procedure.

4   Dated: March __, 2005                    WILLIAMS WALSTON LLP

5

6   _____
                                            /s/
                                            By: Gregory S. Walston

7                                           ATTORNEYS FOR PLAINTIFFS KIMBERLY JONES,
                                            JANE ROE NUMBER ONE, JANE ROE NUMBER TWO,
8                                           JANE ROE NUMBER THREE, JANE ROE NUMBER
                                            FOUR, and JANE ROE NUMBER FIVE, ON BEHALF OF
9                                           THEMSELVES AND ALL SIMILARLY SITUATED

10

11

12

13                                  ## VERIFICATION

14          I, Kimberly Jones, declare under penalty of perjury that I have read the foregoing and that

15   it is true and correct and based on my personal knowledge, except the allegations made on

16   information and belief, and I believe those allegations to be true.  Executed on March 2, 2005 in

17   San Francisco, California.

18

19   _____
                                            /s/
                                            KIMBERLY JONES

20

21

22

23

24

25

26

27

28

WILLIAMS WALSTON
225 Bush Street, 16ᵗʰ Fl.
Tel: (415) 269-3208
Fax: (415) 474-7108

Plaintiff's Verified Complaint